UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
STACY JILL REFF,

                Plaintiff,

    - against -

ANDREW SAUL,[1]

               Defendant.
---------------------------------------------------------x

**MEMORANDUM & ORDER**
18-CV-6878 (PKC)

PAMELA K. CHEN, United States District Judge:

        Plaintiff Stacy Jill Reff commenced this action under 42 U.S.C. § 405(g), seeking judicial review of the decision made by the Commissioner of the Social Security Administration ("SSA") denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). Before the Court are the parties' cross-motions for judgment on the pleadings. (Dkts. 12, 14.) Plaintiff seeks reversal of the Commissioner's decision and an award of DIB retroactively or, alternatively, remand for further administrative proceedings. The Commissioner asks the Court to affirm the denial of Plaintiff's claim. For the reasons set forth below, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. This case is remanded for further proceedings consistent with this Memorandum and Order.

---

[1] Andrew Saul became Commissioner of the Social Security Administration on June 17, 2019. Pursuant to Federal Rule of Civil Procedure 25(d), Andrew Saul is substituted as Defendant in this action. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party."); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."). The Clerk of Court is respectfully directed to update the docket accordingly.

1

## BACKGROUND

**I.  Procedural History**

On August 30, 2015, Plaintiff filed an application with the SSA for DIB, alleging disability beginning on June 25, 2015. (Administrative Transcript ("Tr."),[2] Dkt. 10, at 10.) On September 30, 2015, Plaintiff's application was denied. (*Id.*) Plaintiff then filed a request for a hearing before an administrative law judge ("ALJ"). (*Id.*) On November 13, 2017, Plaintiff appeared with counsel before ALJ Michael Friedman. (*Id.* at 10, 22.) In a decision dated December 28, 2017, the ALJ determined that Plaintiff was not disabled under the Act and was not eligible for DIB. (*Id.* at 10–17.) On September 27, 2018, the ALJ's decision became final when the Appeals Council of the SSA's Office of Disability Adjudication and Review denied Plaintiff's request for review of the decision. (*Id.* at 1–6.) Thereafter, Plaintiff timely commenced this action.[3] (*See generally* Complaint ("Compl."), Dkt. 1.)

---

[2] Page references prefaced by "Tr." refer to the continuous pagination of the Administrative Transcript (appearing in the lower right corner of each page) and not to the internal pagination of the constituent documents or the pagination generated by the Court's CM/ECF docketing system.

[3] According to Title 42, United States Code, Section 405(g),

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g). "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the claimant makes a reasonable showing to the contrary." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)). Applying this standard, the Court determines that Plaintiff received the Commissioner's final decision on October 2, 2018, and Plaintiff filed the instant action on December 3, 2018 (*see* Compl., Dkt. 1)—the first business day after the 60-day deadline, which fell on Saturday, December 1, 2018. Fed. R. Civ. P. 6(a)(1)(C).

## II. The ALJ Decision

In evaluating disability claims, the ALJ must adhere to a five-step inquiry. The claimant bears the burden of proof in the first four steps of the inquiry; the Commissioner bears the burden in the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). First, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the answer is yes, the claimant is not disabled. If the answer is no, the ALJ proceeds to the second step to determine whether the claimant suffers from a "severe" impairment. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe when it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the impairment is not severe, then the claimant is not disabled. In this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 25, 2015, and that Plaintiff suffered from one severe impairment, idiopathic left-sided sensorineural hearing loss.[4] (Tr., at 12.) Having determined that Plaintiff satisfied her burden at the first two steps, the ALJ progressed to the third step and determined that Plaintiff's severe impairment did not "meet[] or medically equal[] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525 and 404.1526)" (the "Listings"). (*Id.*)

Moving to the fourth step, the ALJ found that Plaintiff maintained the residual functional capacity ("RFC")[5] to perform

---

[4] Sensorineural hearing loss is a "form of hearing loss due to a lesion of the auditory division of cranial nerve VIII or the inner ear." *Sensorineural hearing loss*, Stedman's Medical Dictionary 395040.

[5] To determine the claimant's RFC, the ALJ must consider the claimant's "impairment(s), and any related symptoms . . . [which] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

3

sedentary work as defined in 20 CFR 404.1567(a)[6] except that she can sit for up to 6 hours in an 8-hour day, stand and/or walk for only 2 hours in an 8-hour day, and lift and/or carry no more than 10 pounds occasionally and 5 pounds frequently. She is restricted to performing occupations that involve no greater than a moderate noise level, and that do not involve heights, moving machinery, or the operation of a motor vehicle.

(*Id.* at 12–13.) Relying on this RFC finding, the ALJ determined that Plaintiff was capable of performing her past relevant work as a retail sales representative and as a telephone sales representative, as this work does not require the performance of work-related activities precluded by Plaintiff's RFC. (*Id.* at 15.) In the alternative, the ALJ concluded that there are other jobs that exist in significant numbers in the national economy that Plaintiff also could perform. (*Id.* at 16.) The ALJ accordingly concluded that Plaintiff was not disabled under the Act. (*Id.* at 17.)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits. 42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151 (internal quotation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d

---

[6] According to the applicable regulations,

[s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

409, 417 (2d Cir. 2013) (internal quotation and alterations omitted). In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (internal quotation omitted); *see also* 20 C.F.R. § 404.1520(a)(3) ("We will consider all evidence in your case record when we make a determination or decision whether you are disabled."). Ultimately, the Court "defer[s] to the Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir. 2013).

## DISCUSSION

Plaintiff argues that (1) the ALJ did not proffer a sufficient rationale for his step-three finding that Plaintiff's hearing impairment did not meet or equal the severity of an impairment in the Listings (Plaintiff's Memorandum of Law in Support of Her Motion for Judgment on the Pleadings ("Pl.'s Mot."), Dkt. 13, 13–17); (2) the ALJ failed in his duty to develop the record (*id.* at 17–20); and (3) the ALJ's RFC determination is not supported by substantial evidence (*id.* at 20–21). The Court finds that remand is warranted on the ground that the ALJ did not fully develop the administrative record.

**I.     Step-Three Severity Finding**

As of March 27, 2017, the degree of articulation required by an ALJ at step three is governed by Social Security Ruling 17-2P, which states that an ALJ "is not required to articulate specific evidence supporting [the ALJ's] finding that the individual's impairment(s) does not medically equal a listed impairment. Generally, a statement that the individual's impairment(s)

5

does not medically equal a listed impairment constitutes sufficient articulation for this finding." SSR 17-2P, 2017 WL 3928306, at *4 (Mar. 17, 2017); *see also Howarth v. Berryhill*, No. 16-CV-1844 (JCH), 2017 WL 6527432, at *8 n.5 (D. Conn. Dec. 21, 2017) (noting that SSR 17-2P governs an ALJ's step-three severity finding made after March 27, 2017).

Here, the ALJ's step-three finding stated that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the" impairments in the Listings. (Tr., at 12.) The ALJ added that "[p]articular attention has been given to sections 2.10 and 2.11 of the Special Senses and Speech listings. However, the particular requirements of these sections are not established by the evidence." (*Id.*) Pursuant to the applicable regulation, the ALJ's statement that Plaintiff's impairment did not medically equal the severity of an impairment in the Listing constitutes "sufficient articulation" of the ALJ's finding at step three and is not grounds for remand.

## II. Failure to Develop the Record

However, the Court finds that remand is warranted where the ALJ failed to adequately develop the record. "Unlike a judge at trial, the ALJ has a duty to 'investigate and develop the facts and develop the arguments both for and against the granting of benefits.'" *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 n.1 (2d Cir. 2013) (summary order) (quoting *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011)); *see also Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (discussing "the ALJ's affirmative duty to develop the administrative record" and duty to "attempt[] to fill any clear gaps in the administrative record" (internal quotation omitted)); *Nusraty v. Colvin*, 213 F. Supp. 3d 425, 442 (E.D.N.Y. 2016) (finding that, under his "affirmative duty" to develop the record, the ALJ "should have followed up with [the treating physicians] to request supporting documentation or to obtain additional explanations for [their] findings"). This

6

duty applies "even where the applicant is represented by counsel[.]" *Eusepi v. Colvin*, 595 F. App'x 7, 9 (2d Cir. 2014) (summary order). "Whether the ALJ has met his duty to develop the record is a threshold question," *Craig v. Comm'r of Soc. Sec.*, 218 F. Supp. 3d 249, 261 (S.D.N.Y. 2016), and "[l]egal errors regarding the [ALJ's] duty to develop the record warrant remand," *Wilson v. Colvin*, 107 F. Supp. 3d 387, 407 (S.D.N.Y. 2015).

An ALJ satisfies his duty to develop the record "[w]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history'" of the plaintiff. *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)). Thus, the Court looks both to the alleged gap in the administrative record and to the completeness of Plaintiff's history in the record. As to the latter, and pursuant to the regulations effective as of March 27, 2017, "complete medical history" means "the records of [a claimant's] medical source(s) covering *at least* the 12 months preceding the month in which [a claimant] file[s] [an] application." 20 C.F.R. § 416.912(b)(1)(ii) (emphasis added). If a claimant states that her disability "began less than 12 months before [she] filed [her] application, [the ALJ] will develop [the claimant's] medical history beginning with the month [in which the claimant's] disability began unless [the ALJ has] reason to believe [the] disability began earlier." *Id*. In the instant action, where Plaintiff filed her disability application in August 2015 and alleged the onset of disability in June 2015, her "complete medical history" began in June 2015. *See id*. Any medical records from at least the twelve months after June 2015 should have been included in the administrative record. This was not the case.

In addition, "where a record contains no formal RFC assessments from a treating physician and does not otherwise contain sufficient evidence (such as well-supported and sufficiently detailed informal RFC assessments) from which the petitioner's RFC can be assessed, an 'obvious

7

gap' exists and the ALJ is obligated to further develop the record." *Rosado v. Comm'r of Soc. Sec.*, No. 17-CV-2035 (PKC), 2018 WL 2229135, at *5 (E.D.N.Y. May 16, 2018) (quoting *Iacobucci v. Comm'r of Soc. Sec.*, No. 14-CV-1260 (GWC), 2015 WL 4038551, at *4 (W.D.N.Y. June 30, 2015)).

Two sets of diagnostic tests are absent from the administrative record: (1) the results of an MRI that Simon Levy, M.D., Plaintiff's treating otolaryngologist (Tr., at 319), requested for Plaintiff on November 5, 2015 (*id.* at 314) and that occurred prior to her appointment with Dr. Levy on February 18, 2016 (*see id.* at 314-15)[7]; and (2) the results of the additional audiology tests conducted on September 22 and 23, 2016, and October 3, 2017, which are referenced in the medical records of Denise Szandrowski, M.D., Plaintiff's other treating otolaryngologist (*id.* at 329–33).[8] Such diagnostic tests are plainly the type of medical evidence that should have been included in the record so that the ALJ could more accurately evaluate Dr. Levy's opinion that Plaintiff suffered from idiopathic [asymmetric] sensory hearing loss. *See, e.g.*, *Burgess*, 537 F.3d at 132 (noting that "the ALJ, given his duty to develop the record, should have requested that the MRI Report [relied upon by one of the plaintiff's treating physicians] be supplied"); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (noting that a treating physician's opinion receives

---

[7] Defendant argues that, because Dr. Levy considered the MRI results in his February 18, 2016 examination (*id.* at 319), the presence of the MRI results in the administrative record would not have changed the course of Plaintiff's treatment. (Memorandum of Law in Support of the Defendant's Cross-Motion for Judgment on the Pleadings ("Def.'s Mot."), Dkt. 15, at 19.) The Court finds this argument to be a *non sequitur*. Whether the inclusion of the MRI results in the administrative record would have altered the course of Plaintiff's treatment is irrelevant to the Court's review of the ALJ's decision.

[8] Defendant also argues that it is of no consequence that such tests were not in the record, as any adverse findings in the tests would have been made apparent from Plaintiff's testimony at the subsequent ALJ hearing. (Def.'s Mot., Dkt. 16, at 19–20.) The Court disagrees; under this logic, an administrative record need never contain diagnostic tests.

8

"controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record).

The record also does not contain a medical assessment from Dr. Levy. (Tr., at 323–27.) The ALJ declined to request a complete Disability Impairment Questionnaire from Dr. Levy, instead interpreting the fact that Dr. Levy left the questionnaire largely blank as a sign that Plaintiff seemingly did not have any functional limitations. According to the ALJ, "Dr. Levy described no symptoms and reported no functional restrictions." (*Id.* at 14.) However, this is a mischaracterization of Dr. Levy's response, implying that Dr. Levy affirmatively described Plaintiff's absence of symptoms and affirmatively reported the absence of functional restrictions in Plaintiff. Rather, Dr. Levy filled out approximately one page of a five-page form, leaving most of the questionnaire blank, and noted that the ALJ must "see audiogram" for support of his diagnosis of Plaintiff's impairment. (*See id.* at 323–27.) As Plaintiff's October 3, 2017 audiology test occurred after Dr. Levy filled out the small portion of the questionnaire, this note seems to refer to the audiogram of September 22, 2016—again, a diagnostic test not included in the record.

The Court finds that the absence of audiological diagnostic tests and a complete RFC assessment by Dr. Levy, Plaintiff's treating otolaryngologist, constitutes an obvious gap, particularly where the ALJ found that Plaintiff suffered from a single severe impairment of idiopathic sensorineural hearing loss. *See, e.g.*, *Cummings v. Berryhill*, No. 16-CV-1372 (RAR), 2017 WL 4337103, at *5 (D. Conn. Sept. 30, 2017) ("[This Circuit] has determined that failure to include findings does not mean that they do not exist[.]" (citing *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998))); *Calzada v. Astrue*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010) (noting that an ALJ must "seek additional evidence or clarification" when the report from the claimant's medical source "does not contain all the necessary information, or does not appear to

9

be based on medically acceptable clinical and laboratory diagnostic techniques" (internal quotation and alterations omitted)); *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 428 (S.D.N.Y. 2010) ("If the ALJ is not able to fully credit a treating physician's opinion because the medical records from the physician are incomplete or do not contain detailed support for the opinions expressed, the ALJ is obligated to request such missing information from the physician." (citing *Perez*, 77 F.3d at 47)).

The Court's conclusion is further bolstered by the ALJ's own acknowledgement that the administrative record was "not extensive." (Tr., at 14.) *Compare Rosa*, 168 F.3d at 80 (finding that the ALJ had a duty to develop the record where the record was "scant"), *and Bonilla Mojica v. Berryhill*, 397 F. Supp. 3d 513, 538 (S.D.N.Y. 2019) ("[W]here the medical record is not voluminous and contains no assessment of the claimant's limitations from a treating physician, further development may be required."), *with Swiantek v. Comm'r of Soc. Sec.*, 588 F. App'x 82, 84 (2d Cir. 2015) (summary order) (finding that ALJ did not have a duty to develop an extensive medical record with no obvious gaps), *and Tankisi*, 521 F. App'x at 34 ("Given the specific facts of this case, including a voluminous medical record . . . we hold that it would be inappropriate to remand solely on the ground that the ALJ failed to request medical opinions in assessing [RFC].").

Accordingly, this case is remanded so that the ALJ may further develop the record with respect to Plaintiff's audiological diagnostic tests and the medical opinion of Plaintiff's treating physician, Dr. Levy.

## CONCLUSION

For the reasons set forth above, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. The Commissioner's decision is remanded for further consideration consistent with this Order. The Clerk of Court is respectfully requested to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 31, 2020
      Brooklyn, New York